Filed 11/7/25  Riaz v. Fahoum CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SAMREEN RIAZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LUMA FAHOUM,<br><br>    Defendant and Respondent. | F087833<br><br>(Super. Ct. No. VCU291199)<br><br>**ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT]** |

It is hereby ordered that the opinion filed herein on October 10, 2025, be modified as follows:

On page 59, in the first sentence of the second paragraph of the Disposition, the name "Faird" is corrected to "Farid" so the sentence now reads:

Samreen Riaz, also known as Samreen Farid Riaz and Samreen Farid, is hereby declared a vexatious litigant.

Except for the modification set forth, the opinion previously filed remains unchanged.

This modification does not effect a change in the judgment.

FRANSON, ACTING P. J.

**I CONCUR:**

SNAUFFER, J.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SAMREEN RIAZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LUMA FAHOUM,<br><br>    Defendant and Respondent. | F087833<br><br>(Super. Ct. No. VCU291199)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Bret D. Hillman, Judge.

Samreen Riaz, in pro. per., for Plaintiff and Appellant.

Herr Pedersen & Berglund, Leonard C. Herr, Caren L. Curtiss and Ron Statler for Defendant and Respondent.

-ooOoo-

Plaintiff Samreen Riaz appeals from a judgment after court trial entered in favor of a member of the City of Visalia's (City) police department, defendant Luma Fahoum. Riaz contends that in August 2020 she was wrongfully placed under a mental health evaluation hold pursuant to Welfare and Institutions Code section 5150.  Then-lieutenant

Fahoum was not present at Riaz's home when the detention occurred but was the supervisor of City's officers who were present.

Riaz contends the trial judge committed many errors in the proceedings below, including (1) failing to disqualify himself; (2) denying her petition to be allowed to present City with a late claim under the Government Claims Act (Gov. Code,[1] § 810 et seq.); (3) sustaining demurrers to many of her claims for relief; (4) abusing his discretion in making discovery rulings; (5) denying her constitutional right to a jury trial; (6) determining Fahoum did not violate Riaz's Fourth Amendment rights; and (7) denying her posttrial motions. For the reasons set forth below, we affirm the judgment.

In addition, we find that Riaz is a vexatious litigant under the definition in Code of Civil Procedure section 391, subdivision (b)(1)(i) because more than five litigations have been finally determined adversely to her in the past seven years. Therefore, we declare Riaz to be a vexatious litigant and enter a prefiling order authorized by Code of Civil Procedure section 391.7, subdivision (a). That order prohibits Riaz from filing any new litigation in the courts of the State of California in propria persona without first obtaining leave of the presiding judge or justice of the court where the litigation is proposed to be filed.

## FACTS

Riaz is a Muslim woman born in Pakistan, English is not her first language, and she was a practicing dentist at the time of the incidents described below. As background for Riaz's specific claims of misconduct, we note her first amended complaint includes the broad allegation that City's police department had a long history of organized harassment, stalking, illegal surveillance, use of excessive force, trespassing, violating civil rights, failing to investigate, retaliating against whistleblowers, involvement in

---

[1] Undesignated statutory references are to the Government Code unless otherwise noted. (See fn. 6, *post*.)

domestic terrorism, involvement in hate crimes, and discrimination and retaliation against religious minorities, women, and immigrants, including her.

*The Incidents*

In February 2020, Riaz reported to the police that her garage door was vandalized. She alleged that Officers Lucas Valverde and Marisa Burkdoll refused to write a report of the vandalism, Officer Valverde threatened her with the use of excessive force and involuntary detention at Kaweah Health Medical Center, and Officer Burkdoll entered her home without permission. Riaz's pleading described this and other conduct of the officers as the first trespassing incident. For purposes of this opinion, we join the trial court in referring to it as the February 2020 incident.

Another incident occurred on August 12, 2020, when City Police Officer Nathan Henry and County of Tulare Mental Health Crisis Worker Ernest Ceballos went to Riaz's home and took her into custody under Welfare and Institutions Code section 5150 (the 5150 hold). City Police Officers Edvin Canto and Art Alvarez also were present at the detention.

During the trial, Riaz played a video taken at her home. The court reporter did not transcribe what the officers, Riaz, and her mother said on the video. Riaz's opening brief includes her partial transcription and summary of the conversation recorded on the video. At trial, defense counsel stipulated the 5150 hold was involuntary, Riaz did not agree to be evaluated, and the officers did not leave her home when Riaz asked them to leave.

After Riaz was placed under the 5150 hold, she was taken to Kaweah Health Medical Center in Visalia. On the afternoon of August 13, 2020, Riaz was transferred by ambulance from Kaweah Health Medical Center to Heritage Oaks Hospital in Sacramento. Riaz was released on August 17, 2020. In a separate lawsuit against the medical facilities and their personnel, Riaz asserted numerous claims of wrongdoing. Those claims and the background details were described in an opinion of this court and need not be repeated here because the parties are familiar with those claims and details.

3.

(*Riaz v. Kaweah Health Medical Center et al.* (Jan. 31, 2024, F085325) [nonpub. opn.; Tulare County Superior Court case No. VCU291575].)

Fahoum testified at trial that she was the supervising officer when Riaz was detained. Fahoum assigned Henry, who had extensive experience with mental health issues, to investigate after Riaz had made dozens of 911 calls to City reporting what Riaz deemed harassing and stalking by third parties. In making this assignment, Fahoum did not tell Henry how to do his job. Fahoum was not present when the officers went to Riaz's home and detained her. Fahoum did not overrule the decision of the officers in the field. In this opinion, we also refer to the 5150 hold as the August 2020 incident.

*Federal Action*

Before Riaz initiated a federal lawsuit alleging the 5150 hold violated her rights, a claim for damages form was presented to City on her behalf. City received the claim on January 20, 2021. On March 9, 2021, a letter notifying Riaz that her claim had been rejected was sent by City to her attorney, Kellan Patterson.

On June 9, 2021, Riaz's attorney filed a complaint in the United States District Court for the Eastern District of California asserting nine causes of action against (1) the County of Tulare and its employee, Ernest Ceballos, and (2) City and its police officers Nathan Henry, Edvin Canto, and Art Alvarez. (*Riaz v. Henry* (E.D.Cal. Jan. 3, 2023, No. 1:21-CV-00911-ADA-SKO) [2023 U.S. Dist. LEXIS 719; 2023 WL 24218, at pp. *1, *3].) The complaint alleged unlawful seizure under the Fourth Amendment and section 1983 of title 42 of the United States Code (42 USC 1983) (Claim 1); *Monell* claims[2] under 42 USC 1983 (Claims 2 and 3) against City and the County of Tulare; state tort claims against defendants Henry, Canto, and Alvarez, including claims for negligence (Claim 4), false arrest (Claim 7), battery (Claim 8), and intentional infliction of emotional

---

**2** Under *Monell v. Dept. of Social Services of City of New York* (1978) 436 U.S. 658, local governments may be sued directly under 42 USC 1983 for a civil rights violation caused by a municipal policy or custom.

4.

distress (Claim 9); and disability discrimination under Title II of the Americans with Disabilities Act (ADA; 42 U.S.C. § 12101 et seq.) (Claims 5 and 6) against City and the County of Tulare.  (*Riaz v. Henry*, *supra,* at p. *3.)  Fahoum was not named as a defendant in the federal action.

The federal action was set for trial on Riaz's "claims for: (1) unlawful seizure, detention, and confinement under the Fourth Amendment, in violation of 42 U.S.C. § 1983, against defendants Henry, Canto, Alvarez, and Ceballos; (2 and 3) *Monell* liability under 42 U.S.C. § 1983 against defendants City of Visalia and County of Tulare; and (4) negligence, (5) false arrest, (6) battery, and (7) intentional infliction of emotional distress against defendants Henry, Canto, and Alvarez."  (*Riaz v. Henry* (E.D.Cal. Mar. 28, 2025, No. 1:21-CV-00911-KES-SKO) [2025 WL 950636, at *1].)  "On April 7, 2025, the jury returned a verdict for the defendants."  (*Riaz v. Henry* (E.D.Cal. Apr. 15, 2025, No. 1:21-CV-00911-KES-SKO) [2025 WL 1116980, at *1].)  Shortly after the verdict, the district court granted Riaz's attorney's motion to withdraw as counsel.  (*Ibid*.)

*December 2021 Incidents*

Riaz alleged further harassment occurred in December 2021, about six months after she filed the federal action.  Riaz alleged that around 3:00 p.m. on December 14, 2021, she discovered her garage door vandalized and broken, which delayed her picking up her daughter.  Riaz did not allege Fahoum was involved in this incident.

Another incident occurred at Riaz's house on December 25, 2021, which she alleged was further harassment by illegal surveillance activities and intimidation tactics. At around 5:42 p.m., Riaz heard her doorbell ring and several loud knocks.  She opened a window in her door and a male dressed in dark clothes with a mask on his face pointed a flashlight in her eyes and yelled, "Are YOU OK, ARE YOU OK, ARE YOU OK." Riaz asked why he was there, and he stated City "police department got a call to make sure you guys are OK."  The officer did not identify himself when Riaz asked.  After the officer left, Riaz went to her garage door and saw three police cars surrounding her

5.

house. An officer got out of one of the cars, approached Riaz at the garage door, and asked, " 'How are you doing ma'am.' " During the course of their conversation, Riaz asked why the other officer came to her door and the officer told her the other officer may have gotten the wrong house. Later, the officer who knocked on her door came back, stated there was a call for service and that was why he knocked on the door. He gave Riaz his card but did not say who had called the police. Riaz alleged the officers showing up at her home was not a mistake but was a planned event to harass Muslim minorities on Christmas. For purposes of this opinion, we refer to these events as the December 2021 incident.

*License Revocation*

In June 2022, the Dental Board of California (Board) issued an order compelling a mental health evaluation for Riaz pursuant to Business and Professions Code section 820. In August 2022, the Board issued an accusation alleging that Riaz had failed to comply with the evaluation order. On August 2, 2023, the Board suspended Riaz's dental license for failing to submit to the evaluation. The order was suspended for 45 days on the condition that Riaz undertake the evaluation. When Riaz did not, her license was revoked. Riaz asserted the licensing investigation, the accusation, and the loss of her license to practice were a direct result of the 5150 hold. She alleged Fahoum was liable for the loss of income resulting from the revocation of her dental license.

## PROCEEDINGS

On April 8, 2022, about 10 months after the federal action was commenced, Riaz, representing herself, filed a 79-page complaint (excluding exhibits) in Tulare County Superior Court against City, Police Chief Jason Salazar, Fahoum, Sergeant Damon Maurice, and Officers Sergio Pineda, Marisa Burkdoll, Nathan Berry, and Nicolas Fistolera. The complaint included 15 claims for relief, including trespass, intentional infliction of emotional distress, civil harassment, violations of her constitutional rights to free speech and to petition the government, and violations of the Tom Bane Civil Rights

Act (Civ. Code, § 52.1), the American with Disabilities Act (42 U.S.C. § 12101 et seq.), and the Ralph Civil Rights Act of 1976 (Civ. Code, § 51.7). Riaz's sixth claim for relief asserted a violation of Fourth Amendment rights to be free from unreasonable searches and seizures and alleged defendants had no probable cause to come onto her property and place her under the 5150 hold using excessive force.

On May 26, 2022, defense counsel, Riaz, and Riaz's attorney in her federal lawsuit had a telephone conference about deficiencies in her complaint, particularly the fact she had not presented a claim to City under the Government Claims Act. Defense counsel asserted the deficiency could not be cured and requested Riaz dismiss the affected causes of action.

On May 27, 2022, Riaz sent defense counsel an e-mail requesting a claim form. Counsel downloaded a copy of the form from City's website and e-mailed it to Riaz. Later that morning, Riaz e-mailed a completed "Claim for Damages" to City. In answering the form's questions about when her damages were discovered and who did what to cause those damages, Riaz referred to her state court complaint.

On May 31, 2022, the defendants filed a demurrer on the grounds that her claims for relief (1) failed to state facts sufficient to constitute a cause of action and (2) were so unclear and incoherently written as to be uncertain and unintelligible. After an opposition and reply were filed, the trial court adopted its tentative ruling to sustain the demurrer with leave to amend. Among other things, the court determined the complaint was uncertain as to compliance with the Government Claims Act.

*First Amended Complaint & Petition*

In July 2022, Riaz filed a 91-page first amended complaint (excluding exhibits). At the same time, Riaz filed a petition for relief from the claim presentation requirements of the Government Claims Act. In September 2022, City and the other defendants named in the first amended complaint filed a demurrer and a request for judicial notice of (1)

7.

Riaz's claim for damages dated January 13, 2021, (2) City's rejection letter dated March 9, 2021, and (3) the fact Riaz presented no claim to City during 2020.

On September 27, 2022, the trial court held a hearing on the petition for relief from the requirements of the Government Claims Act, heard comments from Riaz (who appeared via Zoom), and adopted its tentative ruling to deny the petition with prejudice as to the February 2020 and August 2020 incidents and without prejudice as to the December 25, 2021 incident. Riaz did not present "any additional evidence … at the hearing on the petition" pursuant to section 946.6, subdivision (e). The court determined (1) the one-year period for submitting a late claim application to the public entity had expired as to the 2020 incidents without a late claim application being presented and (2) the one-year period as to the December 2021 incident had not expired, which meant Riaz still had time to present City with an application for that incident.[3]

On November 1, 2022, the trial court adopted its tentative ruling and (1) sustained the defendants' demurrer without leave to amend as to many of the claims for relief in the first amended complaint; (2) sustained the demurrer with leave to amend as to all defendants on the claims for relief action for (a) violations of the Fourth Amendment, First Amendment, and whistleblower protections and (b) a declaration of rights under article I of the California Constitution; and (3) sustained the demurrer with leave to amend as to City only on a civil rights claim and a discrimination claim.

---

[3]     On October 10, 2022, Riaz filed a notice of appeal listing an August 11, 2022 order continuing a case management conference to November 8, 2022, and the September 27, 2022 order denying her petition for relief. This court assigned the appeal case No. F085099 and sent Riaz a letter stating it was considering dismissing the appeal because it was not taken from an appealable order or judgment. Riaz did not respond to the letter. Thus, she did not cite any authority that such orders are appealable and did not argue the court's letter had misinterpreted the order by suggesting it was not final. (See *Ebersol v. Cowan* (1983) 35 Cal.3d 427, 435, fn. 8 [order denying a petition for leave to file a late claim under § 946.6 is appealable]; *DeVore v. Department of California Highway Patrol* (2013) 221 Cal.App.4th 454, 459 [same].) On November 28, 2022, this court filed an order stating it dismissed the appeal in case No. F085099 as abandoned.

*Second Amended Complaint*

In January 2023, Riaz filed a 148-page second amended complaint (excluding exhibits), which was the operative pleading when the case was tried. Riaz also filed a motion to preserve error for appellate review. Defendants filed a demurrer and a nonopposition to the motion to preserve error. The trial court denied Riaz's nonstatutory motion to preserve error, stating the orders on the demurrers had not resulted in a final, appealable judgment. On March 7, 2023, after an opposition to the demurrer and a reply had been filed, the trial court issued an order adopting its tentative ruling to sustain the demurrer as to the remaining causes of action with one exception. The court overruled the demurrer as to Fahoum on the sixth cause of action brought under 42 USC 1983 and alleging a violation of Riaz's Fourth Amendment rights. The court concluded the 5150 hold on Riaz may have violated Riaz's Fourth Amendment rights if, as alleged, Fahoum acted without probable cause. The court ordered Fahoum to file an answer within 10 days.

As a result of the foregoing orders, the lawsuit proceeded only against Fahoum and only on the Fourth Amendment claim. A three-day court trial began on February 13, 2024. At the end of the third day, the court asked the parties for concise closing briefs on "whether the action of the Visalia Police Department constituted a wrongful detention and what the involvement of Lieutenant Fahoum would have been in that." In early March 2024, the parties filed posttrial briefs.

*Trial Court's Decision*

On March 18, 2024, the trial court signed and filed a 12-page "Ruling and Judgment after Trial" describing the case's procedural history, the testimony presented at trial, and its analysis and ruling. The court's analysis stated Riaz needed to prove three things to prevail on her claim: (1) she was wrongly detained in violation of her Fourth Amendment rights; (2) Fahoum was responsible for the detention; and (3) she suffered

9.

damages. The court determined Riaz "presented sufficient evidence on none of these points at trial."

Besides determining Riaz had failed to meet her burden of proof, the trial court found (1) the City "police officers had probable cause for the detention" under section 5150 of the Welfare and Institutions Code; (2) "[t]he evidence at trial did not establish improper conduct by officers in the field much less that [Fahoum] engaged in improper conduct or approved, ratified or set in motion such conduct"; and (3) Riaz "suffered no damages based on [Fahoum]'s conduct."

On March 25, 2024, the trial court filed a judgment after court trial stating "judgment is hereby entered in favor of Defendant, Luma Fahoum." The next day, Riaz filed a notice of appeal.

On April 9, 2024, Riaz filed (1) an ex parte notice and motion to vacate the judgment, (2) a memorandum of points in support of the ex parte motion to vacate the judgment, (3) a memorandum that the trial court interpreted as a motion for new trial, and (4) an ex parte application for motion to disqualify judge. The minute order from the April 11, 2024 ex parte hearing stated (1) Riaz was not present and counsel for Fahoum was present and (2) the court denied the request to vacate the judgment and the request for a new trial due to "lack of exigency, lack of statutory compliance and lack of appearance." Later that day, the trial judge filed an order denying and striking Riaz's request for disqualification.

## DISCUSSION

### I.  SCOPE OF THIS APPEAL

Riaz's opening brief raises numerous claims of trial court error. In comparison, Fahoum's respondent's brief identifies only two issues—whether the judgment was supported by substantial evidence and whether Riaz's right to a jury trial was violated. In view of the parties' divergent approaches, a threshold issue of some significance is which

10.

of Riaz's claims of error are within this court's jurisdiction (i.e., power or authority) to consider and which are not.

### A. Disqualification of the Trial Judge

The first issue about the scope of this appeal is whether this court has the authority to consider Riaz's claim that Judge Bret Hillman erred, abused his discretion, and showed bias when he failed to recuse himself despite Riaz's multiple petitions for disqualification. This issue can be rephrased as whether the trial court's denial of Riaz's multiple requests are appealable orders. The answer is "no."

An order denying a request for "the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought only by the parties to the proceeding." (Code Civ. Proc., § 170.3, subd. (d); *People v. Nieves* (2021) 11 Cal.5th 404, 498, fn. 13 ["statutory right to impartiality is raised through a motion to disqualify an assertedly biased judge ..., the resolution of which is reviewable only by writ of mandate"].) The statute is binding upon this court and, consequently, we have no authority in this appeal to consider Riaz's argument that the trial judge should have been disqualified.

### B. Scope of Appeal as Defined by Riaz's Notice of Appeal

Next, we consider the principle that "it is the notice of appeal which defines the scope of the appeal by identifying the particular judgment or order being appealed." (*Morton v. Wagner* (2007) 156 Cal.App.4th 963, 967.) In applying this principle, we are directed to liberally construe the notice of appeal. (Cal. Rules of Court, rule 8.100(a)(2).)

Riaz used optional Judicial Council form APP-002 when she filed her notice of appeal. In items 1.a. and 1.b. of the form, Riaz stated she was appealing from a judgment or order entered "march 18 24." She checked the box in item 1.c. for "Judgment after court trial" and included the following note: "Petitioner SAC demanded jury trial however justice hillman at the day of tr[ia]l appellant was surprised when informed judge

11.

hillman failed to bring jury and presided in case where disqualification of judge was at issue."

Based on the notice of appeal's reference to a date, we interpret it as an appeal from the March 18, 2024 "Ruling and Judgment after Trial." Based on the box checked, we also interpret the notice of appeal as encompassing the "JUDGMENT AFTER COURT TRIAL" signed and filed on March 25, 2024.

C.     <u>Defendants Subject to the Ruling and the Judgment</u>

Having determined the ruling and the subsequent judgment are covered by the notice of appeal, we consider another potential limitation on the scope of this appeal—that is, which of the named defendants are covered by those documents.

The last paragraph of the "Ruling and Judgment after Trial" stated: "The Court orders judgment in favor of Defendant. Defendant shall recover her costs. Defendant is ordered to prepare a judgment consistent with these findings." Because the trial was on one cause of action against one defendant, the use of the singular "Defendant" and the possessive pronoun "her" clearly refers to Fahoum and does not include City or the other individuals named as defendants in Riaz's initial or amended complaints. The judgment confirms this interpretation by using more specific language. It stated that "judgment is hereby entered in favor of Defendant, Luma Fahoum." The judgment, like the trial court's written ruling, did not mention City or any defendants other than Fahoum.

Consequently, the scope of this appeal is limited to issues relating to Riaz's claims against Fahoum. In the absence of a final judgment in favor of City or the other named defendants, we lack the authority to consider Riaz's claims of trial court error pertaining to those defendants.

D.     <u>Intermediate Orders Affecting the Judgment</u>

Here, we consider whether Fahoum's respondent's brief is correct in asserting this appeal is limited to two issues—whether substantial evidence supports the judgment and

12.

whether Riaz's right to a jury trial was violated. Fahoum's assertions imply various pretrial orders in her favor are beyond the scope of this appeal.

We reject this implication because it is obviously contrary to the statutes that define a reviewing court's authority. In particular, Code of Civil Procedure section 906 provides that, upon appeal from a judgment, "the reviewing court may review the … decision *and* any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment … appealed from or which substantially affects the rights of a party[.]" (Italics added.) This provision creates the general rule that "appellate review of a nonappealable order lies only on appeal from a *subsequent* appealable judgment or order." (Eisenberg, *California Practice Guide: Civil Appeals and Writs* (The Rutter Group 2024) ¶ 2:261, p. 2-169.) For example, an interim ruling foreclosing certain claims, such as a nonappealable order sustaining a demurrer, are reviewable on appeal from the final judgment in the action. (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 128.) Unlike an appealable order, an appellant need not specify intermediate orders in the notice of appeal. (*LaCour v. Marshalls of Calif., LLC* (2023) 94 Cal.App.5th 1172, 1184; see also *County of Los Angeles v. City of Los Angeles* (1999) 76 Cal.App.4th 1025, 1028) [appellate court is "obligated" and "required" to conduct the review under Code Civ. Proc., § 906].)

Based on this statutory provision defining the scope of appellate review, our next step is to identify the intermediate rulings and orders that (1) Riaz has challenged in her opening brief and (2) involve the merits, necessarily affect the judgment, or substantially affect the rights of Riaz. (Code Civ. Proc., § 906.) For organizational purposes, we list these intermediate orders in chronological order.

ONE: The September 27, 2022 order denying Riaz's petition for relief from the claim presentation requirements of the Government Claims Act. We construe the denial as an intermediate order because Riaz's direct appeal from the order in case No. F085099 was dismissed. (See pt. II., *post* & fn. 3, *ante*.)

13.

TWO:  The November 1, 2022 order sustaining the defendants' demurrer *without leave to amend* as to many of the first amended complaint's claims for relief.  (See pt. III., *post*.)

THREE:  The March 7, 2023 order sustaining the demurrer as to the remaining causes of action except the sixth claim as to Fahoum.  (See pt. IV., *post*.)  That claim was brought under 42 USC 1983 and alleged a violation of Riaz's Fourth Amendment rights.

FOUR:  The November 21, 2023 order denying Riaz's discovery motions.

Here, we consider the consequences of defense counsel's inappropriately narrow view of the scope of this appeal and the resulting failure of Fahoum's respondent's brief to address Riaz's claims of trial court error involving these intermediate orders.  First, applying established case law, we conclude such failures are not deemed a concession or admission that those orders contain prejudicial error.  (See *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 557, fn. 48 ["respondent's failure to address an issue raised in the opening brief is not a concession"]; see also, Cal. Rules of Court, rule 8.220(a)(2).)  Second, Riaz still must meet the appellant's burden of demonstrating prejudicial error.  As a result, in reviewing Riaz's claims, this court is obligated to examine the record and reverse only if prejudicial error has been demonstrated.  (*Lane v. Valverde* (2012) 203 Cal.App.4th 71, 74, fn. 1.)

II.    PETITION REGARDING THE GOVERNMENT CLAIMS ACT

A.    Claim Presentation Requirement

The Government Claims Act is a comprehensive statutory scheme governing the liabilities and immunities of public entities and public employees for torts.  It eliminated all common law tort liability for public entities by providing such entities are not liable for an injury except as otherwise provided by statute.  Section 815, 815.2, and 820 establish the general rule that an employee of a public entity is liable for his torts to the same extent as a private person and the public entity is vicariously liable for any injury its

14.

employee causes to the same extent as a private employer. (*Cavey v. Tualla* (2021) 69 Cal.App.5th 310, 326–327.) This general rule of tort liability is subject to various exceptions, including the immunity provisions included in the Government Claims Act.

In addition, the liability imposed on local public entities and their employees by the Government Claims Act is subject to the condition that "all claims for money or damages against local public entities" must be "presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) .…" (§ 905.) Chapter 2 sets forth requirements for the presentation and consideration of claims. Among other things, it specifies what a written claim must contain (§ 910) and the time in which the claim must be presented (§ 911.2). When a personal injury is involved, the written claim for damages must be presented to the public entity "not later than six months after the accrual of the cause of action." (§§ 911.2, subd. (a), 945.4.)

When a claim is not presented within the six months specified in section 911.2, "a written application may be made to the public entity for leave to present that claim." (§ 911.4, subd. (a).) The late claim application must be presented "within a reasonable time not to exceed one year after accrual of the cause of action and shall state the reason for the delay in presenting the claim." (§ 911.4, subd. (b).) The proposed claim must be attached to the application. (*Ibid*.)

When a public entity denies a late claim application, the applicant's last recourse is to petition the court for relief from the claim presentation requirements. (*J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 653–656 (*J.M.*).) "The petition shall be filed within six months after the application to the board is denied or deemed to be denied pursuant to Section 911.6." (§ 946.6, subd. (b).) This six-month period is a mandatory statute of limitations. (*J.M.*, *supra*, at p. 653.) Furthermore, a court may relieve the petitioner of the claim presentation requirements only if, among other things, the late claim application was made within a reasonable time and not more than one year after accrual of the cause of action. (*J.M.*, *supra*, at p. 653; § 911.4, subd.

15.

(b).)  Based on the foregoing principles, if a timely application for leave to present a late claim has not been submitted to the public entity, this failure will bar the claimant's lawsuit against the public entity.  (*Cavey v. Tualla*, *supra*, 69 Cal.App.5th at p. 334; see *Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1779 [courts have no jurisdiction to grant relief when the application is made outside the one-year period].)

B.       Riaz Did Not Apply to Present a Late Claim

The trial court's order denying Riaz's petition for relief from requirements of the Government Claims Act stated Riaz had not submitted a late claim application and, even with some tolling, more than one year had passed since the February 2020 and August 2020 incidents.  Based on the amount of time that has passed since those incidents, we conclude it was no longer possible for Riaz to submit a timely application for leave to present a late claim with respect to those incidents.  As a result, the court had no choice but to deny the petition as to those incidents because it lacked the jurisdiction (i.e., authority) to rule otherwise.  (See *Munoz v. State of California*, *supra*, 33 Cal.App.4th at p. 1779.)

The trial court also denied the petition without prejudice as to the December 2021 incident because the one-year period had not expired and, thus, it was still possible for Riaz to apply to City to present a late claim for that incident.  We conclude the denial without prejudice was appropriate because the court could not grant the petition and direct City to allow a late claim to be presented where no application had been submitted. (See *J.M.*, *supra*, 2 Cal.5th at p. 653; § 911.4, subd. (b).)

In sum, the trial court did not err when it issued the September 27, 2022 order denying Riaz's petition for relief from the claim presentation requirements of the Government Claims Act.

16.

III.    DEMURRER TO FIRST AMENDED COMPLAINT

The November 1, 2022 order sustained defendants' demurrer without leave to amend as to many of the first amended complaint's claims for relief.  Here, we address the claims for relief eliminated by that order.

A.    Section 945.6—Filing Suit Within Six Months of Claim's Rejection

Many of Riaz's state law claims were determined to be untimely.  A lawsuit asserting state law claims for money or damages against a public entity or employee "is too late if it is filed after expiration of the applicable statute of limitations set forth in the Government Claims Act, not the statute of limitations applicable to private defendants." (*Cavey v. Tualla*, *supra*, 69 Cal.App.5th at p. 329–330.)  The statute of limitations applicable to Riaz's state law claims for money or damages is set forth in section 945.6, subdivision (a)(1).  It provides that, with certain exceptions, the lawsuit must be commenced not later than six months after the public entity's written notice of rejection of the claim is delivered to the claimant personally or deposited in the mail.  (§ 945.6, subd. (a)(1).)

Riaz alleged she complied with the Government Claims Act by presenting a claim to City in January 2021 and further alleged City rejected the claim by operation of law on March 9, 2021.  We assume for purposes of this appeal that the claim covered both the February 2020 incident and the August 2020 incident.  The subsequent December 2021 incident could not have been addressed in a claim filed 11 months before the incident.

The rejection notice City sent to Riaz's attorney was dated March 9, 2021, and, in accordance with the statute, stated Riaz had only six months to file a court action on the claim.  (See § 913, subd. (b) [rejection notice's warning regarding the six-month limitations period].)  Three months later, Riaz timely filed her federal action, which included state law claims subject to the claim presentation requirements and statute of limitations contained in the Government Claims Act.  In contrast, this state court action

was filed in April 2022, nearly 13 months after the rejection notice.[4]  Consequently, the state law claims in this case that seek monetary relief are untimely because this lawsuit was filed more than six months after the rejection notice was sent.  (§ 945.6, subd. (a)(1).)

Accordingly, the trial court correctly sustained the demurrer, without leave to amend, as to the first (trespass), second (intentional infliction of emotional distress), third (civil harassment, Code Civ. Proc., § 527.6), eighth (Bane Act, Civ. Code, § 52.1), 14th (stalking, Pen. Code, § 646.9), 15th (Ralph Civil Rights Act, Civ. Code § 51.7), 16th (false imprisonment), and 17th (assault) claims for relief in the first amended complaint.

B.    Taxpayer Action

The fifth claim for relief in Riaz's first amended complaint is described as a taxpayer action under section 526a of the Code of Civil Procedure to restrain waste and the illegal expenditure of funds.  That statute "establishes the right of a taxpayer plaintiff to maintain an action against any officer of a local agency to obtain a judgment restraining or preventing illegal expenditure, waste, or injury of the estate, funds, or property of said agency."  (*Schmid v. City and County of San Francisco* (2021) 60 Cal.App.5th 470, 495.)  In this context, "waste" has a narrow meaning that "does not encompass the great majority of governmental outlays of money or the time of salaried governmental employees, nor does it apply to the vast majority of discretionary decisions made by state and local units of government."  (*Chiatello v. City and County of San Francisco* (2010) 189 Cal.App.4th 472, 482–483.)  "Rather, it is more readily understood

---

[4]    Emergency rule 9 of the California Rules of Court, appendix I, was adopted because of the COVID-19 pandemic and tolled statutes of limitations from April 6, 2020, until October 1, 2020.  (See *People v. Accredited Surety & Casualty Co., Inc.* (2022) 79 Cal.App.5th 656, 660, fn. 2 and accompanying text.)  This tolling provision was no longer in effect when the six-month statute of limitations began running in March 2021.

18.

as 'a "useless expenditure of funds." ' " (*Collins v. Thurmond* (2019) 41 Cal.App.5th 879, 910.)

"To state a claim, the taxpayer must allege specific facts and reasons for the belief the expenditure of public funds sought to be enjoined is illegal." (*Coshow v. City of Escondido* (2005) 132 Cal.App.4th 687, 714.) "A cause of action for waste of public funds cannot prevail if based upon innuendo and legal conclusions.… Otherwise, public officials performing their duties would be harassed constantly." (*Sagaser v. McCarthy* (1986) 176 Cal.App.3d 288, 310.) "Accordingly, 'the statute should not be applied to principally "political" issues or issues involving the exercise of the discretion of either the legislative or executive branches of government.'" (*Collins v. Thurmond*, *supra*, 41 Cal.App.5th at p. 910.)

The trial court determined "the first amended complaint states only allegations, innuendo and legal conclusions without specific, actual facts supporting the allegations." The court also concluded waste does not encompass discretionary governmental action. Further, the court determined Riaz had not demonstrated she could amend to cure the deficiencies.

The taxpayer claim is set forth in paragraphs 674 through 687 of the first amended complaint. None of the paragraphs mention Fahoum. Therefore, those allegations lack the specificity needed to state a taxpayer action against Fahoum for her nondiscretionary expenditure of public funds. Similarly, the wrongful conduct of Fahoum alleged to have occurred in connection with the 5150 hold—these allegations were incorporated by reference into the taxpayer claim—are not encompassed in the definition of "waste" set forth above and are not correlated to a specific, nondiscretionary expenditure of funds. Therefore, the allegations in the first amended complaint fail to state a claim under section 526a of the Code of Civil Procedure against Fahoum. (*Coshow v. City of Escondido*, *supra*, 132 Cal.App.4th at p. 714.)

Next, we consider whether the trial court erred by sustaining the demurrer as to the taxpayer claim without leave to amend. To answer that question, a reviewing court must "decide whether there is a reasonable possibility that the defect can be cured by amendment." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) The burden of demonstrating a reasonable possibility of curing the pleading's defect "is squarely on the plaintiff." (*Ibid.*; see generally, *Jameson v. Desta* (2018) 5 Cal.5th 594, 609 ["burden is on an appellant to demonstrate ... an error that justifies reversal"].)

"To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.] The assertion of an abstract right to amend does not satisfy this burden. [Citation.] The plaintiff must clearly and specifically set forth ... factual allegations that sufficiently state all required elements of that cause of action. [Citations.] Allegations must be factual and specific, not vague or conclusionary." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43–44 (*Rakestraw*).) Here, Riaz has not clearly and specifically set forth factual allegations of how Fahoum wasted funds. As a result, she has failed to carry her burden of demonstrating it was error to deny her leave to amend the taxpayer claim against Fahoum.

C.     Declaratory Judgment

The fourth claim for relief in Riaz's first amended complaint requested a declaratory judgment and referred to section 2201 of title 28 of the United States Code and section 1060 of the Code of Civil Procedure. As with the taxpayer claim, this claim does not mention Fahoum. As a result, it is uncertain what acts or omissions by Fahoum would be addressed in any declaratory judgment. To the extent the claim incorporates allegations about Fahoum's participation in the 5150 hold violating Riaz's rights and seeks a declaratory judgment to that effect, Riaz cannot demonstrate any error in sustaining the demurrer as to that theory of relief was prejudicial because that theory was

20.

tried to the court and Fahoum prevailed.  Consequently, there is no reasonable probability of Riaz obtaining a more favorable result if her claim for a declaratory judgment against Fahoum was remanded to the trial court for further proceedings.  (See *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574 [test for prejudice]; Code Civ. Proc., § 475.)

With respect to leave to amend, Riaz has not demonstrated how the fourth claim for relief could be amended to cure the claim's uncertainty and identify particular acts or omissions by Fahoum that could be addressed in a declaratory judgment.  (*Rakestraw*, *supra*, 81 Cal.App.4th at pp. 43–44.)  As a result, we conclude that, insofar as the fourth claim pertains to Fahoum, the demurrer was properly sustained without leave to amend.

D.     Federal Discrimination Claims

1.     *Title VI*

The 10th claim for relief in Riaz's first amended complaint alleged discrimination in violation of Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d) and the statute establishing the Department of Justice's Office of Justice Programs (34 U.S.C. §§ 10101–10112).  Section 601 of Title VI of the Civil Rights Act of 1964 provides, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  (42 U.S.C. § 2000d.)

To state a claim under Title VI, a plaintiff must allege the defendant entity is engaged in prohibited discrimination and is involved in receiving federal financial assistance.  (See *Joseph v. Boise State University* (D. Idaho 2024) 998 F.Supp.2d 928, 944.)  Fahoum is not an entity involved in the receipt of federal funds.  Therefore, Riaz has failed to allege a claim against her under Title VI.  (*Joseph*, *supra*, at p. 948 [individual defendants cannot be liable under Title VI].)  As to the statutes establishing

21.

the Office of Justice Programs, Riaz has cited no authority that those statutes create a private right of action or, more specifically, a private right of action against an individual.

### 2. *ADA and Rehabilitation Act*

The 11th claim for relief in Riaz's first amended complaint alleged disability discrimination under the ADA and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794). Riaz alleged City was a public entity subject to Title II of the ADA. She alleged defendants were aware of her disability because in 2020 she provided the police department with information about Dr. Sievert's diagnosis of delusional disorders and further alleged defendants took advantage of that information by using it as a weapon against her.

The allegations in the 11th claim were made against City, a "public entity" as that term is defined in the ADA. (See 42 U.S.C. § 12131, subd. (1)(B) [public entity means any local government].) Fahoum is not a public entity and is not subject to a claim under the ADA. Therefore, Fahoum's demurrer to the ADA claim was properly sustained.

The scope of the Rehabilitation Act is similar. It prohibits individuals with a disability from being "subjected to discrimination under any program or activity receiving Federal financial assistance." (29 U.S.C. § 794, subd. (a).) Congress limited the scope of section "504 of the Rehabilitation Act to those who actually 'receive' federal financial assistance[.]" (*United States Dept. of Transportation v. Paralyzed Veterans of America* (1986) 477 U.S. 597, 605.) Fahoum is not a program or activity receiving federal financial assistance. Therefore, a claim cannot be stated against her under the Rehabilitation Act.

In addition, federal courts have determined that a claim based on a violation of these specific federal statutes cannot be brought under 42 USC 1983. (*Vinson v. Thomas* (9th Cir. 2002) 288 F.3d 1145, 1156 [plaintiff cannot bring an action under 42 U.S.C.

22.

§ 1983 against a state official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act].)

To summarize, assuming the 11th claim attempted to state a cause against Fahoum, the demurrer was properly sustained without leave to amend.

## IV.     DEMURRER TO SECOND AMENDED COMPLAINT

In January 2023, Riaz filed her second amended complaint.  In March 2023, the trial court sustained the demurrer as to the seventh, ninth, and 12th claims for relief.  The court allowed the sixth claim alleging a violation of Riaz's Fourth Amendment rights to go forward against Fahoum.

### A.     First Amendment Rights (Seventh Claim)

The seventh claim for relief in Riaz's second amended complaint alleged violations of her rights under the First Amendment and the California Constitution to freedom of speech and to petition the government for a redress of grievance and asserted a right to sue for the violations under 42 USC 1983 and Code of Civil Procedure section 527 (preliminary injunctions and temporary restraining orders).  In that claim, Riaz alleged that after she filed a lawsuit against Altura Centers for Health in the Tulare County Superior Court, she was retaliated against in various ways, including organized stalking and the police department's failure to investigate retaliatory crimes.  She alleged Fahoum used the 5150 hold as part of a plan to intimidate her and prevent her from testifying in court.  Riaz further alleges Fahoum was "involved in causing the constitutional deprivation and injury to [Riaz]."

Insofar as the seventh claim for relief pertains to conduct by Fahoum, it is another legal theory of relief based on the same underlying primary right of Riaz—namely, the right to be free from an unlawful 5150 hold—and the same breach of duty that was the basis for the sixth cause of action for wrongful detention in violation of Riaz's Fourth Amendment right to be free from unreasonable seizures.  In other words, the underlying

23.

factual basis for Riaz's claims against Fahoum under the Fourth Amendment and First Amendment was Fahoum's involvement in the 5150 hold.

"[A] 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: *the violation of a single primary right gives rise to but a single cause of action.* [Citation.]" (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681, italics added.) "Although 'the phrase "causes of action" is often used indiscriminately ... to mean *counts* which state differently the same cause of action' [citation], its more precise meaning 'is the right to obtain redress for a harm suffered' [citation]. ' "Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief." ' " (*Hayes v. County of San Diego* (2013) 57 Cal.4th 622, 631.)

In light of the trial court's findings about Fahoum's limited involvement in the decision to place Riaz under the 5150 hold, it follows that Riaz would not be able to prove Fahoum wrongfully used the 5150 hold to prevent or chill Riaz's exercise of her right to free speech and her right to petition the government. Consequently, any error in sustaining Fahoum's demurrer to the seventh claim for relief was not prejudicial—that is, there is no reasonable probability of Riaz obtaining a more favorable result if the First Amendment claim was remanded to the trial court for further proceedings. (See *Soule v. General Motors Corp.*, *supra*, 8 Cal.4th at p. 574 [test for prejudice]; Code Civ. Proc., § 475.)

B.     Whistleblower (Ninth Claim)

The ninth claim for relief in Riaz's second amended complaint stated 42 USC 1983 is one of the most powerful whistleblower laws in that it protects whistleblowers from retaliation by public officials for disclosing constitutional violations, such as police

24.

brutality, to the press, a city council, and other public bodies. The ninth claim included allegations about action taken by Police Chief Jason Salazar but did not mention Fahoum. Consequently, to the extent that the ninth cause of action was intended to state a claim against Fahoum, the allegations against Fahoum are those made earlier and incorporated by reference into the ninth claim for relief. As discussed above, the retaliatory conduct allegedly taken by Fahoum was her involvement in the 5150 hold and, in light of the trial court's findings, any error in sustaining the demurrer on the ninth claim for relief as to Fahoum was not prejudicial.

C.     Declaration of Rights (12th Claim)

The heading for Riaz's 12th claim in her second amended complaint stated the claim was under California Constitution article I, Declaration of Rights, sections 1 through 32. The claim quoted several of those sections and asserted the defendants violated them. It alleged the defendants were sworn police officers of City's police department who were acting under the color of state law when they deprived Riaz of her constitutional and statutory rights. Riaz alleged: "In Summary, Defendant[s] are in violation of 42 U.S. Code § 1983 – Civil action for deprivation of rights because" defendants deprived her of many civil rights, defendants acted intentionally and under color of state law, and defendants caused her damage in the form of emotional and mental trauma.

In sustaining the demurrer to this claim for relief, the trial court noted Riaz had listed sections of the California Constitution and then Riaz had asserted defendants were in violation of 42 USC 1983. The court stated: "Although the sections are clearly denoted, California constitutional claims are not cognizable under [42 USC] 1983 because they fail to satisfy the first element [of such claims]: that a right secured by the Constitutional or laws of the United States was violated. [Citation.] This appears equally applicable to the City and Individual Defendants."

25.

First, we agree with the trial court that stating a claim under 42 USC 1983 requires the plaintiff to allege the violation of a right secured by the Constitution or laws of the United States. (*West v. Atkins* (1988) 487 U.S. 42, 48.) Accordingly, by relying on alleged violations of the California Constitution, Riaz has failed to satisfy the first element of a cause of action under 41 USC 1983.

Second, if Riaz's allegations about federal law are regarded as surplusage and ignored, the question is whether Riaz's 12th claim states a cause of action for money damages under California law. The California Supreme Court has concluded the due process clause of the California Constitution does not create a private right of action for money damages. (*Katzberg v. Regents of University of California* (2002) 29 Cal.4th 300, 329.) Similarly, the court declined to recognize a constitutional tort action for damages to remedy a violation of the free speech clause of the California Constitution. (*DeGrassi v. Cook* (2002) 29 Cal.4th 333, 344.) This precedent requires us to conclude that Riaz has not stated a claim for relief based on the alleged violations of the due process clause and the free speech clause of the California Constitution.

As to the other violations of provisions in article I of the California Constitution, Riaz has not presented "any basis for concluding that a damages remedy was contemplated or reasonably might be inferred within [those provisions] for violation of [them]." (*Katzberg v. Regents of University of California*, *supra*, 29 Cal.4th at p. 324.) Further, Riaz has not undertaken the analysis set forth in *Katzberg* for determining whether to recognize a tort action for damages to remedy a violation of the state constitution. (See *Katzberg*, *supra*, at p. 325.) As a result, Riaz has not carried her burden of affirmatively demonstrating the trial court erred by failing to recognize such a claim for damages. In sum, we conclude the trial court did not err when it sustained the demurrer to the 12th cause of action without leave to amend as to Fahoum.

V.     ERRORS CONNECTED TO THE TRIAL

    A.     Discovery Rulings

        1.     *Riaz's Motions*

On October 16, 2023, Riaz filed the following requests for discovery orders: (1) a notice and motion to compel production of documents from nonparties Tulare County Health & Human Services Agency and Altura Centers for Health and request for sanctions; (2) a notice and application for order to show cause for contempt of court order by nonparties Tulare County Health & Human Services Agency (County HHS) and Altura Centers for Health; and (3) a motion to compel response of Altura Centers for Health for defying court ordered subpoena, production of records, and sanctions.

Altura Centers for Health filed an opposition to the motion to compel and a supporting declaration. County HHS also filed an opposition to the motion to compel. Fahoum filed a motion to quash the deposition subpoena for production of business records.

On November 20, 2023, Riaz filed a notice and ex parte motion to compel production of documents from City, and nonparties Kaweah Health Medical Center, Family Healthcare Network, Tulare County Sheriff's Department, and McDonald's Corporation. This document included an objection to Fahoum's motion to quash.

On November 21, 2023, after no requests for oral argument were presented, the trial court adopted its tentative to deny Riaz's motions.

        2.     *Claims of Error*

Riaz contends the trial court showed its prejudice and bias towards her by obstructing the discovery process based on pretextual reasons. In her view, the court should have ordered compliance with her subpoena requests and imposed sanctions. Based on these contentions, we consider whether the trial court had legally sound reasons for denying Riaz's discovery motions.

We first consider the subpoena for production of business records directed to County HHS. On September 27, 2023, a deputy clerk issued a deposition subpoena for production of business records on mandatory Judicial Council form SUBP-010 that requested documents from County HHS. The request was for all documents referring or relating to County HSS employees who interacted with the Visalia police department and its employees (including Fahoum) for Welfare and Institutions Code encounters and incidents, including personnel files, payroll records, contracts, agreements, e-mails, medical records, benefits, job descriptions, job applications, interview notes, complaints filed against individuals, disciplinary records relevant to Welfare and Institutions Code, attendance records, performance evaluations, training materials, leaves or vacations, and license information.

The trial court's November 2023 order listed several reasons for denying the motion. First, there was no proof of personal service of the subpoena as required by Code of Civil Procedure section 2020.220, subdivision (c). Second, the subpoena was not directed at a specific deponent or custodian of records as required by Code of Civil Procedure section 2020.410, subdivision (c). Third, the subpoena was overbroad on its face, failing to "designate the business records to be produced either by specifically describing each individual item or by reasonably particularizing each category of item" as required by Code of Civil Procedure section 2020.410, subdivision (a). Fourth, Riaz did not demonstrate compliance with consumer privacy notice requirement under Code of Civil Procedure section 1985.3 triggered by the request for medical and payroll records. Fifth, the motion seeking to compel a nonparty's response to a subpoena was not personally served, but appeared to have been electronically served.

We need not consider the validity of each of these grounds for denying the motion to compel production. We conclude the trial court properly determined the subpoena was overbroad on its face and failed to comply with Code of Civil Procedure section 2020.410, subdivision (a), the relevant portion of which is quoted above. First, the

28.

subpoena referred to Welfare and Institutions Code encounters and incidents. This general description was not limited to a particular type of encounter or incident, such as incidents involving a hold under Welfare and Institutions Code section 5150. Second, the request was unlimited as to time. The Lanterman-Petris-Short Act (LPS Act; Welf. & Inst. Code, § 5000 et seq.), which contains provisions authorizing involuntary confinement of varying lengths, became operative on July 1, 1969. (*People v. Triplett* (1983) 144 Cal.App.3d 283, 286.) Thus, if the request was construed as limited to incidents involving confinement under the LPS Act, it still would cover over five decades. Therefore, the request did not "reasonably particulariz[e] each category of item" sought as required by Code of Civil Procedure section 2020.410, subdivision (a) and the trial court correctly denied the motion to compel.

We next consider the subpoena for production of business records that requested documents from Altura Centers for Health and was issued by a deputy clerk on form SUBP-010 on October 2, 2023. The subpoena described the documents requested using language the same or similar to the subpoena sent to County HSS. The trial court denied the motion to compel for the same reasons it denied the motion to compel production of records from County HSS.

We agree with the trial court that the request did not "reasonably particulariz[e] each category of item" sought as required by Code of Civil Procedure section 2020.410, subdivision (a). Accordingly, we conclude the trial court properly denied the motion to compel.

The next discovery request we consider is Riaz's November 20, 2023 ex parte motion to compel responses to subpoenas directed to City and four nonparties. The trial court denied the motion for the same reasons it denied the other two motions. In addition, the court denied the motion because Riaz had failed to establish good cause for the court to hear the motion on an ex parte basis as required by California Rules of Court, rule 3.1204. We have reviewed the subpoenas requesting documents from the four

29.

nonparties and they contain the broad description of documents similar to those set forth in the subpoenas to County HSS and Altura Centers for Health.  Thus, the ex parte motion was properly denied on the ground the subpoenas did not comply with Code of Civil Procedure section 2020.410, subdivision (a).

The subpoena directed to City sought any and all documents that refer to, relate to, or reference the employment of Fahoum with the City police department, without limitation.  The subpoena also stated the records sought included "Luma Fahoum timesheets, clock in [] and out records, and documentation of any arrest, interaction (direct or indirect) or detainment performed by Luma [F]ahoum throughout her term of employment that are related or relevant to CALIFORNIA WELFARE AND INSTITUTIONS CODE [i]ncidences[.]"  We conclude the trial court properly determined the subpoena did not comply with Code of Civil Procedure section 2020.410, subdivision (a).

In addition, the court correctly determined an ex parte motion was not justified.  Riaz did not make "an affirmative factual showing … of irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte."  (Cal. Rules of Court, rule 3.1202(c).)

In sum, the trial court had valid reasons for denying Riaz's discovery motions.  As a result, we will not infer the denials were the result of prejudice or bias.

B.    Right to Jury Trial and Deposit of Jury Fees

1.    *Applicable Statutes, Rules and Forms*

The right to a jury trial in civil cases is constitutionally guaranteed but may be waived "by the consent of the parties expressed as prescribed by statute."  (Cal. Const.,

art. I, § 16.)[5]  Under Code of Civil Procedure section 631, a party in a civil case may waive the right to a jury trial in several ways, including by failing to timely deposit the jury fees required by section 631.  (Code Civ. Proc., § 631, subd. (f).)  Here, Riaz waived her right to a jury trial by failing to timely deposit the jury fees and by failing to obtain an appropriate fee waiver.  (Code Civ. Proc., § 631, subds. (b), (c)(2), (f)(5).)

California Rules of Court, rule 3.55 lists the "[c]ourt fees and costs that must be waived upon granting an application for an initial fee waiver[.]"  Jury fees are not on the list.  California Rules of Court, rule 3.56 provides:  "Necessary court fees and costs that *may* be waived upon granting an application for an initial fee waiver, either at the outset or upon later application, include: [¶] (1) Jury fees and expenses[.]"  (Italics added; see Cal. Rules of Court, rule 1.5(b)(2) [" 'May' is permissive"].)

Mandatory Judicial Council form FW-002, Request to Waive Additional Court Fees (Superior Court), is used by indigent litigants to obtain a waiver of jury fees.  This form is filed with or after a form FW-001, Request to Waive Court Fees.  Item 5 of form FW-002 asks "What other fees do you want your court fee waiver order to cover?"  Immediately after this question, the form directs the applicant to check the boxes that apply.  The first box is for "Jury fees and expenses."  Nothing in the record shows that Riaz filed a form FW-002 or otherwise obtained a waiver of the jury fees.

### 2. *Trial Court's Decision*

At the start of the first day of the court trial, Riaz asked, "Where is the jury?"  An exchange followed, and the trial court explained why a court trial was being conducted.  During that exchange, the trial court stated that, at the settlement conference held the previous month, "I confirmed it as a court trial.  No one has ever requested a jury.  No

---

**5**  We confine our analysis to the California Constitution because "[t]he Seventh Amendment of the United States Constitution, which guarantees a federal right to jury trial in civil cases, is not binding on the states.  (*Jehl v. Southern Pac. Co.* (1967) 66 Cal.2d 821, 827.)"  (*Hung v. Wang* (1992) 8 Cal.App.4th 908, 927.)

one has ever requested a jury be paneled or paid the jury fees or sought that they be waived." Riaz responded by stating her complaint requested a jury trial and she had called the court and confirmed that no fees were due.

The trial court's ruling after trial included the following paragraph about Riaz's request for a jury trial and the question of jury fees.

> "On the day of trial, [Riaz] inquired about the absence of a jury. The court informed her that the matter had been set as a court trial at a Case Management Conference on April 12, 2023. Although Plaintiff declined to attend that hearing, a copy of the minute order was mailed to her the same day which stated '*Court Trial* set for February 13, 2024...' The court had no record of [Riaz] ever tendering jury fees or seeking to have them waived. The minute order from the settlement conference on January 25, 2024, which [Riaz] attended, also notes, '*Court Trial* set for February 13, 2024, at 9:00 AM in Department 7.' [Riaz] asserted that she had a right to a jury trial as she had stated this in her complaint, but this is contrary to the requirements of Code of Civil Procedure § 631. The Court routinely allows jury fees to be posted after the first case management conference, but not when a party makes no effort to do so until the morning of trial. After extended argument, the court ruled that plaintiff had waived jury through the conduct noted above and the matter proceeded to a court trial. The Court notes that [Riaz] represented herself in a jury trial before the Court in February 2023, and knows the steps necessary to obtain a jury trial." (Italics added.)

### 3. Analysis of the Record

The last paragraph of Riaz's second amended complaint reads: "961: **Demand For Jury Trial**." Thus, the record show Riaz was accurate when stated she had requested a jury trial in her pleading. The record also shows the trial court accurately described the contents of the minute order from the case management conference held on April 12, 2023. The order stated Riaz was not present, "Jury waived," and a court trial was set for February 13, 2024. The court also was accurate when it stated there was no record of Riaz ever tendering jury fees or seeking to have them waived. Specifically, the appellate record does not contain a form FW-002 or other application to have the jury fees waived. As a result of Riaz's failure to deposit jury fees or obtain a waiver of the

32.

jury fees, the trial court correctly determined that Riaz had waived her right to a jury trial. (See Code Civ. Proc., § 631, subd. (f); Cal. Rules of Court, rule 3.56.) Riaz's contention that she had a fee waiver on file in this case is beside the point because her requests to waive court fees on form FW-001 and the related orders on form FW-003 granting the requests did not cover jury fees.

Consequently, we conclude the trial court did not err when it determined Riaz had not deposited any jury fees, had not obtained a waiver of jury fees, and thus had waived her right to a jury trial.

C.      Omissions in the Trial Court's Written Ruling

At the end of the third day of the trial, the trial court set a schedule for posttrial briefs and stated that, after the briefs were submitted, "the Court will issue a ruling in writing." After the court answered a question from defense counsel, Riaz asked: "Can you please issue a ruling in writing so -- you know, I'll look into it." The court repeated: "I will issue a ruling in writing. Okay." On March 18, 2024, after the posttrial briefs were filed, the trial court filed its 12-page "Ruling and Judgment after Trial."

Riaz contends the trial court's ruling "concealed" many facts, including almost all of her statements made at the trial. We interpret this contention as asserting the trial court erred by failing to include things in its ruling that should have been included.

When a superior court conducts a court trial, its obligations regarding the contents of its written decision are set forth in Code of Civil Procedure section 632. The court is not required to make "written findings of fact and conclusions of law." (*Ibid*.) It is, however, required to "issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial." (*Ibid*., italics added.)

We assume for purposes of this appeal that Riaz's oral request for "a ruling in writing" qualifies as a request for a statement of decision and the "Ruling and Judgment

33.

after Trial" was the court's statement of decision.  A statement of decision may be defective when, in certain situations, it fails to adequately explain the factual and legal basis for the court's decision because it is ambiguous or omits critical findings.  (Code Civ. Proc., § 634.)  When a timely objection is made and the deficiencies are not cured, the judgment may be reversed.  (Fairbank, et al., *California Practice Guide: Civil Trials and Evidence* (The Rutter Group 2024) ¶ 16:202, p. 16-48.)  "The trial court's failure to make findings on material issues which would fairly disclose its determination may be reversible error.  [Citation]  [¶]  But failure to make findings on issues raised in the pleadings is *harmless* error where:  [¶] – other findings in the statement of decision are sufficient to support the judgment[.]"  (*Id.*, ¶ 16:213, p. 16-49.)

Applying the foregoing principles to the trial court's ruling, we conclude the concealments or omissions raised by Riaz on appeal do not make the ruling an inadequate statement of decision.  A trial court is not required to make an express finding of fact on every factual matter controverted at trial; its statement of decision need only resolve all the basic issues in the case.  (*Bauer v. Bauer* (1996) 46 Cal.App.4th 1106, 1118.)  Consequently, a trial court's statement of decision is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case.  (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 500.)  Here, the trial court resolved all the basic issues because the ruling (1) identified the three elements Riaz had to prove to prevail on her Fourth Amendment claim and (2) stated the court's determination as to each element.

Consequently, the ruling is adequate to explain the legal and factual basis for the court's decision.  The concealments or omissions raised by Riaz do not constitute reversible error.  (See *In re Marriage of Garrity & Bishton* (1986) 181 Cal.App.3d 675, 686–687 [statement of decision is required only to state ultimate rather than evidentiary facts].)

D.    Determination that Riaz Failed to Meet Her Burden of Proof

1.    *Standard of Review*

Fahoum contends the judgment is reviewed for substantial evidence and the record contains substantial evidence supporting the judgment. In contrast, Riaz contends the argument that substantial evidence supports the judgment is fundamentally flawed because it is based on generalized, false, misrepresented, partial and concealed facts. She also asserts Fahoum failed to identify specific, credible evidence supporting the judgment. Riaz argues these errors demand a critical reexamination of the trial court's findings and necessitate appellate intervention to ensure justice.

Under well-established principles of appellate practice, after a court trial, appellate courts independently review the trial court's determination of questions of law, which include questions of statutory construction (*Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1492) and review the sufficiency of the evidence to support the trial court's express and implied findings of fact under the substantial evidence standard (*Brewer v. Murphy* (2008) 161 Cal.App.4th 928, 935). When applying the substantial evidence standard, appellate courts view the evidence in the light most favorable to the prevailing party, drawing every reasonable inference and resolving all conflicts in the evidence in support of the judgment. (*Brewer*, *supra*, at p. 935.) Evidence is "substantial" for purposes of this standard of review if it is of ponderable legal significance, reasonable in nature, credible, and of solid value. (*Ibid*.)

However, when a court determines the party with the burden of proof at trial did not carry that burden, it is misleading to state the failure-of-proof determination is subject to appellate review under the substantial evidence standard. (*Valero v. Board of Retirement of Tulare County Employees' Assn.* (2012) 205 Cal.App.4th 960, 965.) Where the failure-of-proof determination is challenged on appeal, the question for the appellate court is whether the evidence compels a finding in favor of the appellant as a matter of law. (*Id*. at p. 966.) When applying this standard, appellate courts ask whether

the appellant's evidence was (1) uncontradicted and unimpeached and (2) of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding. (*Ibid*.; accord, *Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838.)

### 2. *The Trial Court's Decision and Applicable Standard*

The trial court's written ruling stated Riaz needed to prove three things to establish liability under her Fourth Amendment claim and "[s]he presented sufficient evidence on none of these points at trial." It also stated the evidence presented "at trial did not establish improper conduct by officers in the field much less that [Fahoum] engaged in improper conduct or approved, ratified or set in motion [any improper] conduct." These statements demonstrate the trial court determined that Riaz did not carry her burden of proof at trial. (See generally, Evid. Code, §§ 115 [burden of proof defined], 500 [party who has the burden of proof].)

Consequently, we consider whether a finding in favor of Riaz was compelled as a matter of law—that is, whether the evidence supporting her claim was (1) uncontradicted and unimpeached and (2) of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding. "Where, as here, the judgment is against the party who has the burden of proof, it is almost impossible for h[er] to prevail on appeal by arguing the evidence compels a judgment in h[er] favor." (*Bookout v. State of California ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1486.)

### 3. *Analysis of the Evidence*

Riaz's appellate briefing did not identify the standard of review that is applied to a trial court's determination that she failed to carry her burden of proof. As a result, Riaz has not attempted to demonstrate that uncontradicted and unimpeached evidence

36.

compelled a finding that Fahoum was directly involved in the decision to place her under the 5150 hold and Fahoum did not leave that decision to the officers in the field.

During the trial, Fahoum testified that the officers told her they were going to go back to Riaz's house and visit with her and, if Riaz was not going to go with them, they would place Riaz under an involuntary hold. The following exchange ensued:

"Q. What was your response?

"[Fahoum:] I don't tell them how to make decisions in the field. Those are their decisions to make.

"Q. You are their supervisor?

"[Fahoum:] I do, but the officers that went to your home that day are well qualified and have lots of tenure and have dealt with situations like this in the past.

"Q. So, basically, you were aware that they were putting 5150; you didn't stop them.

"[Fahoum:] I would not stop them. It is their assessment, not mine."

This testimony by Fahoum would have directly contradicted any evidence presented by Riaz that Fahoum was directly responsible for the decision to place Riaz under the 5150 hold. For example, Riaz refers to video evidence she presented at trial that show when Officer Henry told her they were going to take her to the hospital, Riaz stated she needed to talk to his supervisor and asked him to call his supervisor. Riaz asserts that Officer Henry responded, "I was told by my supervisor to do this." The phrase "to do this" is ambiguous. Officer Henry could have used the phrase to mean he was told to contact Riaz and make his own assessment of whether to place her under the 5150 hold and, as a result, there was no point in contacting Fahoum because Fahoum would not overrule a decision made in the field. Another example is Riaz's contention that the trial court erred in stating the evidence showed Fahoum had spoken to Riaz on

37.

many occasions, but Fahoum also testified that she had never met Riaz or spoken with her.

These examples and the other assertions of error made by Riaz (such as the video evidence that the officers heard Riaz's mother tell them that Riaz was in good health) do not establish that uncontradicted and unimpeached evidence compelled a finding in Riaz's favor. Consequently, Riaz has not demonstrated the trial court erred in determining she failed to carry her burden of proof.

### 4. Qualified Immunity

Riaz also contends the trial court erred in stating Riaz did not show how Fahoum was not entitled to qualified immunity because "there was no showing of any acts or conduct by [Fahoum] outside of her normal job duties and responsibilities." Riaz contends that, contrary to the court's findings, Fahoum and Police Chief Salazar acted outside their normal job duties and responsibilities when they seized her from her house (where she had a reasonable expectation of privacy) without a warrant or a probable cause hearing. Like Riaz's approach to the court's determination that she failed to prove her Fourth Amendment claim, Riaz has not established the uncontradicted and unimpeached evidence compelled a finding that Fahoum acted outside her normal duties and responsibilities in connection with the 5150 hold. Fahoum's testimony about her involvement in the 5150 hold contradicts Riaz's contention that Fahoum acted outside her normal duties and responsibilities.

### E. Claims of Legal Error by the Trial Court

### 1. Probable Cause Standard

Riaz contends the trial court erred in determining "that the Visalia police officers had probable cause for the detention in this case." In Riaz's view, there was a warrantless arrest, not a detention.

38.

Under Welfare and Institutions Code section 5150, subdivision (a), "[w]hen a person, as a result of a mental health disorder, is a danger to others, or to himself or herself, or gravely disabled," law enforcement officers and medical professionals may "upon probable cause" take that person to an appropriate facility for assessment, evaluation, and crisis intervention for up to 72 hours. (§ 5150, subd. (a).) The probable cause necessary to initiate a 5150 hold is similar to that needed for a warrantless arrest to satisfy Fourth Amendment standards. (*People v. Triplett, supra,* 144 Cal.App.3d 283, 287.) Consequently, the trial court's reference to "the detention" instead of "Riaz's warrantless arrest" does not establish the court applied the wrong legal standard for probable cause when it decided the case.

Furthermore, the trial court's ruling explicitly described the probable cause standard it used by stating:

> "To find probable cause to detain a person pursuant to [Welfare and Institutions Code] section 5150, facts must be known to the officer that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself or is gravely disabled. In justifying the intrusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant his or her belief or suspicion. *People v. Triplett* (1983) 144 Cal.App.3d 283, 287-288."

The foregoing accurately describes the proper probable cause standard for a 5150 hold. Consequently, the court's finding that the "officers had probable cause for the detention in this case" is not tainted by the use of a legally erroneous probable cause standard.

### 2. *Spoliation of Evidence*

Riaz's opening brief asserts the trial court lost evidence, she is seeking spoliation sanctions, and the decision to impose sanctions for the spoliation of evidence by the trial judge is within this court's discretion. The lost evidence referred to is three videos that

Riaz played during the trial. Riaz contends she introduced the videos during the trial, they were submitted as evidence, and, after submission, the trial court had an obligation to preserve the evidence. She also asserts the court's decision did not accurately depict the facts shown on the videos. In Riaz's view, "the evidence was destroyed with a culpable state of mind."

The trial court's written ruling explained the videos were not part of the record because Riaz "did not present them in any way they could be preserved for later review" but the videos were played on Riaz's laptop for the court and opposing counsel. Riaz addresses this explanation by asserting the court stated during the trial that the video evidence was admitted; the videos were part of trial exhibit P; she offered to transfer the videos to a court computer but court staff declined the offer; the court did not mention *during trial* that the videos had not been preserved for later review; and the written ruling confirmed the court did not review the videos when the ruling and judgment were prepared, which harmed her case

Although Riaz has not established that the trial court committed an error in its handling of the video evidence or that the court was obliged to rewatch the videos when it prepared its written ruling, we will assume (without deciding) for purposes of this appeal that an error occurred. As a result of this assumption, we address the issue of whether the assumed error was prejudicial. To obtain a reversal, an appellant has the burden of demonstrating an error occurred and the error was prejudicial. (See *Jameson v. Desta*, *supra*, 5 Cal.5th at p. 609; Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.)

Riaz had not met her burden of demonstrating how the assumed error prejudiced her claim for relief against Fahoum. The legal test for prejudice is whether there is a reasonable probability Riaz would have obtained a more favorable result in the absence of the error. (See *Soule v. General Motors Corp.*, *supra*, 8 Cal.4th at p. 574.) Based on the information about the videos in the reporter's transcript, Riaz's responses to the court's inquiry about how the videos were relevant to the claim against Fahoum, and

40.

Riaz's opening brief's partial transcription of the dialogue on the videos, we conclude there is no reasonable probability Riaz would have obtained a more favorable result against Fahoum if the videos had been handled in the manner Riaz contends is proper. Nothing in the record suggests, and Riaz does not contend, the videos establish (1) Fahoum was at Riaz's home when the officer placed her under the 5150 hold or (2) Fahoum was otherwise involved in the decision to place Riaz under the 5150 hold. As a result, even if the video showed there was no probable cause for the 5150 hold, they would not demonstrate Fahoum was liable for an improper seizure of Riaz. Thus, no prejudice has been demonstrated.

### 3. *Judge as a Material Witness*

Riaz contends she discovered evidence during the appeal process in another of her cases indicating that Judge Hillman was a material witness and personally involved in the controversy of this case (i.e., case No. VCU291199). Exactly what the judge witnessed and how it is relevant to the claim against Fahoum is unclear. Among other things, she refers to case No. VCU276991 where she "pleaded facts related conspiracy among Judge Hillman and defendant Lawrence [L]arocca and Severo PLC."

We have located nothing in the appellate record showing Judge Hillman was a witness to the 5150 hold or any of Fahoum's involvement in the August 2020 incident. Thus, we reject Riaz's contention that he is a material witness. Similarly, we have no basis for finding the judge is involved in a conspiracy against Riaz or is biased against her. "Mere expressions of opinion, based on observation of the witnesses and evidence, do not demonstrate judicial bias. [Citation.] Numerous and continuous rulings against a party are not grounds for a finding of bias." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 589.) Her claim that the judge made an adverse discovery ruling "due to his personal interest that could potentially expose him to criminal liability" also lacks merit.

VI.    MOTIONS FILED AFTER THE NOTICE OF APPEAL

Riaz's opening brief states that one of the questions presented by her appeal is whether the trial court erred on April 11, 2024, when it denied her motion to vacate the judgment and denied her motion for new trial.  As explained below, the trial court did not commit a prejudicial error when it denied the motions because, at that point in the proceedings, it lacked the jurisdiction to enter an order affecting the judgment.

On March 26, 2024, the day after the judgment was entered, Riaz filed her notice of appeal challenging the judgment.  As a general rule, the filing of a valid notice of appeal divests the trial court of jurisdiction over anything affecting the judgment and vests jurisdiction in the appellate court, until it determines the appeal and issues a remittitur.  (*People v. Flores* (2003) 30 Cal.4th 1059, 1064; Code Civ. Proc., § 916, subd. (a).)  The purpose of this rule is to prevent trial courts from rendering the appeal futile by conducting proceedings that might affect or alter the judgment while the appeal is pending.  (*Stubblefield v. Superior Court* (2025) 108 Cal.App.5th 675, 680.)

Nothing in the record suggests that Riaz's notice of appeal was invalid or that any exceptions to the general rule applied to her postjudgment motions.  Consequently, on April 11, 2024, when the trial court denied the motions, it lacked the authority to grant the motions.  Accordingly, the order denying the motions could not constitute prejudicial error because there is no probability, reasonable or otherwise, that Riaz could have obtained a more favorable result on the motions.  (See *Soule v. General Motors Corp.*, *supra*, 8 Cal.4th at p. 574 [test for prejudice]; Code Civ. Proc., § 475.)

VII.    VEXATIOUS LITIGANT

A.    Basic Legal Principles

California's vexatious litigant statute (Code Civ. Proc., §§ 391–391.7)[6] applies exclusively to self-represented litigants.  (*John v. Superior Court* (2016) 63 Cal.4th 91,

---

[6]    Undesignated statutory references in Part VII. of this opinion are to the Code of Civil Procedure.

93 (*John*).)  The statutory scheme "provides a 'means of moderating a vexatious litigant's tendency to engage in meritless litigation.' " (*Garcia v. Lacey* (2014) 231 Cal.App.4th 402, 406.)  "Section 391.7, subdivision (a), authorizes a trial or *appellate court* to enter, '*on its own motion* or the motion of any party,' a prefiling order that prohibits a self-represented vexatious litigant from 'filing any new litigation in the courts of this state ... without first obtaining leave of the presiding justice or presiding judge of the court where the litigation is proposed to be filed.'  (§ 391.7, subd. (a) …)."  (*John*, *supra*, at p. 93, italics added.)

In accordance with this grant of power, appellate courts have ordered parties appearing before them to show cause why the court should not declare them a vexatious litigant.  (E.g., *Karnazes v. The Lauriedale Homeowners Assn.* (2023) 96 Cal.App.5th 275, 279 (*Karnazes*); *In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 1005; *In re Kinney* (2011) 201 Cal.App.4th 951, 957.)  Based on these decisions and *John*, we reject Riaz's arguments that an appellant court lacks the authority to (1) enter, on its own initiative, an order to show cause containing a sua sponte vexatious litigant motion, (2) conduct a hearing pursuant to section 391.2, and (3) enter an order declaring a person to be a vexatious litigant and imposing a prefiling order pursuant to section 391.7, subdivision (a).

A person can be declared a vexatious litigant only if that person comes within one of the four definitions in section 391.  The first definition states a vexatious litigant is a person who "[i]n the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person[.]"  (§ 391, subd. (b)(1).)  This was the only definition of a vexatious litigant identified in our July 10, 2025 order to show cause.  Further, our July 29, 2025 order explicitly advised Riaz that whether she would be declared a vexatious litigant would be limited to the application of this definition.  To aid Riaz in identifying relevant evidence and issues, the

order advised that "the court will not consider whether she qualifies as a vexatious litigant under the definitions in section 391, subdivisions (b)(1)(ii), (b)(2), (b)(3), or (b)(4)."

The statute defines "litigation" as any civil action or proceeding, "commenced, maintained or pending in any state or federal court." (§ 391, subd. (a).) This definition has been interpreted to include any appeal or writ proceeding. (*Garcia v. Lacey*, *supra*, 231 Cal.App.4th at p. 406; see *In re Kinney*, *supra*, 201 Cal.App.4th at p. 958 ["The vexatious litigant statutes do not apply solely to the trial courts. Each writ petition and appeal constitutes 'litigation.' "].) Consequently, separate appeals taken from different orders made in the same superior court case and finally determined adversely to the person qualify as a "litigation" for purposes of the vexatious litigant statute. (*In re Marriage of Falcone & Fyke*, *supra*, 203 Cal.App.4th at pp. 1005–1007 [wife declared vexatious litigant under § 391, subd. (b)(1) based on unsuccessful writ petitions and appeals taken from various orders in a marital dissolution action].)

The statutory phrase "finally determined adversely" used in section 391, subdivision (b)(1)(i) is defined in judicial decisions. A litigation is " 'finally determined adversely' to the litigant under section 391 if they do not win the action or proceeding they began—including appeals they have voluntarily dismissed and those involuntarily dismissed for procedural defects—and the 'avenues for direct review (appeal) have been exhausted or the time for appeal has expired.' " (*Karnazes*, *supra*, 96 Cal.App.5th at p. 280; see *Garcia v. Lacey*, *supra*, 231 Cal.App.4th at p. 407, fn. 5; *Fink v. Shemtov* (2010) 180 Cal.App.4th 1160, 1173-1174 [appeal dismissed as untimely].)

B.     Procedural Background

In July 2025, this court, on its own motion, ordered Riaz to show cause why we should not declare her a vexatious litigant pursuant to section 391, subdivision (b)(1)(i) and issue a prefiling order against her pursuant to section 391.7. The order to show cause

directed her to address whether 15 cases identified in an exhibit to the order amounted to at least five litigations that had been "finally determined adversely to [Riaz]." (§ 391, subd. (b)(1)(i).) The order to show cause also advised Riaz that any request for judicial notice was required to comply with Evidence Code sections 450 to 459 and California Rules of Court, rule 8.252(a). The rule requires the party to "serve and file a separate motion with a proposed order" and attach a copy of the document to be noticed. (Cal. Rules of Court, rule 8.252(a)(1), (a)(3).)

On July 27, 2025, Riaz submitted a 33-page response to the order to show cause that she described as an answer, demurrer, and motion to strike. The document raised a wide range of issues, including the contention that an appellate court lacks the authority, on its own motion, to declare a person a vexatious litigant. On July 29, 2025, this court filed an order stating that, "to the extent Riaz's demurrer is based on the ground that this court cannot, on its own motion, enter a vexatious litigant order, the demurrer is overruled." The order also advised the parties that we would consider and resolve the other arguments raised in Riaz's response after the evidentiary hearing, if any. The order also stated Riaz was entitled to an evidentiary hearing on the court's motion to declare her a vexatious litigant and, at such a hearing, she could present "evidence, written or oral, by witnesses or affidavit." (§ 391.2 [right to hearing].) The order directed Riaz to inform the court within 10 days whether she was requesting an evidentiary hearing and the manner in which she intended to appear at such a hearing—that is, in person, by video conference, or by telephone conference. To clarify the scope of any hearing, the order further advised the parties that any argument or evidence presented at the hearing on the issue of whether Riaz was a vexatious litigant should be limited to the definition of vexatious litigant contained in section 391, subdivision (b)(1)(i) because that was the only ground identified in the order to show cause. This clarification was made because of the many assertions in Riaz's response that her motions and filings were not frivolous or lacked good faith. Whether filings or other tactics "are frivolous" is relevant to the

definition of vexatious litigant contained in section 391, subdivision (b)(3). Because the order to show cause addressed a different definition, whether Riaz's lawsuits and appeals were frivolous was not "material to the ground" (§ 391.2) raised in this court's order to show cause.

On August 8, 2025, Riaz filed a 69-page motion to vacate the July 10, 2025 order to show cause and the July 29, 2025 order. On the same day, counsel for Fahoum withdrew his request for oral argument on the appeal.

On August 12, 2025, this court filed an order granting Fahoum's counsel's request to waive oral argument in the appeal. Based on Riaz's earlier written waiver of oral argument, the order stated no oral argument would be held on the appeal, which was separate and distinct from the other pending matters—namely, (1) the order to show cause relating to the court's pending vexatious litigant motion; (2) the unresolved issues in Riaz's July 28, 2025 response, which she described as an answer, demurrer, and motion to strike; and (3) Riaz's motion to vacate this court's orders of July 10 and 29, 2025. The order stated the hearing on those matters was set for September 17, 2025; Riaz would be given 30 minutes, unless she requested more time in writing; and Riaz's motion to vacate the orders of July 10 and 29, 2025, was denied.

On August 18, 2025, Riaz filed a letter containing seven numbered requests for clarification of the order to show cause and the orders issued after the order to show cause, She also filed a 113-page motion (1) to vacate the August 12, 2025 order; (2) to lift any stay of the appeal that was in place; (3) to issue an en banc opinion in the appeal without delay before addressing the other separate and distinct matters; and (4) to postpone the September 17, 2025 hearing due to a legal defect in the August 12, 2025 order. Riaz argued this court was required by the due process clause in the California Constitution to adjudicate the threshold issues raised by her constitutional and jurisdictional objections before any evidentiary hearing.

On September 11, 2025, this court filed an order addressing the seven points on which Riaz requested clarification and denying her requests to (1) vacate this court's August 12, 2025 order; (2) lift any stay of the appeal (no stay exists); (3) issue an en banc opinion in the appeal; (4) postpone or continue the September 17, 2025 hearing; and (4) issue rulings on threshold issues of constitutionality and jurisdiction before the hearing is held. The order also granted this court's own motion to take judicial notice of the appellate record and its opinions in case Nos. F085852, F088202, F085325, F086457, F085321, F085829, F085100, F087504, and F086624, which are appeals or writ proceedings pursued by Riaz as a self-represented litigant. The parties were notified of the court's judicial notice motion in the July 29, 2025 order and no oppositions were filed.

The September 11, 2025 order also stated: "***Appearance at the Hearing***. Riaz has not filed a written waiver of the hearing or advised the court whether she intends to appear in person, by video conference, or by telephone conference. The court assumes Riaz will attend in person unless notified otherwise."

The afternoon of Sunday, September 14, 2025, Riaz electronically submitted a 175-page ex parte motion to vacate the September 11, 2025 order that included several requests related to the September 17, 2025 hearing that this court had previously rejected. In the motion, Riaz stated she was not waiving her right to any hearing. The motion did not inform the court whether she would appear at the hearing set for 9:00 a.m. on September 17, 2025, or if her appearance would be in person, by video conference, or by telephone. The motion asserted Riaz was entitled to a ruling on her various challenges to the propriety of this court's sua sponte vexatious litigant motion before any evidentiary hearing under section 391.2 was held. The motion also stated that the "court can decide with or without appellate attendance on sept 17 25 as documents filed are sufficient in threshold matters but (not for evidentiary hearing which must be postponed to dec 25 25 or after dec 25 25." (Underlining omitted.)

On September 15, 2025, this court filed and electronically served an order advising Riaz that the September 17, 2025 hearing would proceed as scheduled on the points identified in the court's earlier orders. Later that evening, Riaz electronically submitted a slightly revised ex parte motion.

On the morning of September 17, 2025, Riaz did not appear in court for the hearing and did not contact the clerk's office. After oral argument in the other matters schedule for that morning, the panel noted Riaz's absence, the lack of any contact explaining the absence, and declared in open court that both the appeal and the vexatious litigant motion were taken under submission.

C.    Threshold Legal Arguments Regarding the Vexatious Litigant Motion

The papers filed by Riaz with this court on July 28, 2025, August 8, 2025, August 18, 2025, and September 15, 2025, raised a wide range of legal issues. Riaz asserted that, before this court could consider and decide the merits of the sua sponte vexatious litigant motion, it was required to resolve her constitutional, jurisdictional and other procedural challenges to the sua sponte motion.

1.    *Appellate Court's Authority to Bring and Grant Its Own Motion*

Riaz has argued that appellate courts lack the authority to initiate a vexatious litigant inquiry using an order to show cause. This argument was rejected in our July 29, 2025 order that overruled part of Riaz's demurrer to the order to show cause. The reasons for our rejection of this argument are stated in part VII.A. of this opinion.

2.    *Submission of the Appeal and Timing of Decisions*

Riaz has argued this court was required to take under submission the appeal from the judgment in favor of Fahoum immediately upon the waiver of oral argument by the parties and issue a decision *before* proceeding on the sua sponte vexatious litigant motion. (Cal. Const., art. VI, § 19; Cal. Rules of Court, rule 8.256(d)(1).)

The parties' waiver of oral argument was finalized on August 12, 2025, when we granted Fahoum's application to withdraw her request for oral argument and stated that "both parties have now waived the right to oral argument in writing." California Rules of Court, rule 8.256(d)(1) states "[a] cause is submitted when the court has heard oral argument or approved its waiver …." For purposes of this opinion, we assume Riaz has correctly asserted the August 12, 2025 order accepting the waiver of oral argument should be interpreted to mean the appeal from the judgment in Fahoum's favor was "submitted for decision" for purposes of section 19 of article VI of the California Constitution on the date of that order. Based on this assumption, we next consider (1) whether that appeal should be decided before the sua sponte vexatious litigant motion and (2) whether this opinion deciding the appeal is timely.

We note that section 19 of article VI of the California Constitution and California Rules of Court, rule 8.256(d) do not require an appeal and a sua sponte vexatious litigant motion to be decided in a particular sequence. In addition, the case law has not adopted a mandatory sequence. For example, in *Karnazes*, the First District decided its sua sponte vexatious litigant motion *before* the appeal, which remained pending after the court issues a prefiling order under section 391.7, subdivision (b). (*Karnazes*, *supra*, 96 Cal.App.5th at p. 282.) In comparison, the Sixth District used a single opinion to decide (1) its order to show cause why the appellant should not be declared a vexatious litigant and (2) five in propia persona appeals filed by the appellant. (*In re Marriage of Falcone & Fyke*, *supra*, 203 Cal.App.4th at pp. 1005–1007.) Thus, our use of a single opinion is not new—that approach was employed by the Sixth District over a decade ago.

Riaz also argued the September 17, 2025 hearing should have proceeded solely on the threshold issues raised in her motion to vacate—that is, her constitutional, jurisdictional and other procedural challenges to the sua sponte motion. We reject this argument because nothing in the text of section 391.2 requires threshold legal issues to be addressed in a hearing held before an evidentiary hearing. Section 391.2 provides in

49.

relevant part: "At the hearing upon the motion the court shall consider any evidence, written or oral, by witnesses or affidavit, as may be material to the ground of the motion." The term "the hearing" is singular and, therefore, does not require the multiple hearings envisioned by Riaz. As a result, we conclude it is appropriate to give a party the opportunity for one hearing on a vexatious litigant motion, provided that, as here, the party could have presented "evidence, written or oral, by witness or affidavit" at the hearing. (§ 391.2.) Furthermore, the fundamental requirements of procedural due process—notice and an opportunity to be heard—were satisfied in this case because this court's orders advised Riaz that she could present evidence at the September 17, 2025 hearing and could argue the legal issues raised by our order to show cause and her various filings. Lastly, even if California Rules of Court, rule 3.1112(a) applied to appellate courts, we have located nothing in its text requiring the sua sponte vexatious litigant motion be heard in two stages.

To summarize, we conclude a hearing allowing Riaz to both present evidence and make oral arguments on the various legal issues she raised did not violate the vexatious litigant statutes, the rules of court, or due process. Accordingly, Riaz's rights have not been violated by the use of a single opinion to decide both the appeal and the sua sponte vexatious litigant motion or by giving Riaz an opportunity for only one hearing of the vexatious litigant motion.

On the question of timeliness, we assume (as argued by Riaz) that the appeal should be deemed submitted on August 12, 2025, when respondent's waiver of oral argument was accepted by this court. Using that as the submission date, this opinion is within the 90-day period set forth in section 19 of article VI of the California Constitution. Consequently, we conclude (1) Riaz has not been denied a timely decision in the appeal from the judgment and (2) her related claim that this court imposed a de facto stay of the appeal is not correct. Further, our decision in this appeal was not

influenced or tainted by our decision resolving the vexatious litigant motion or, vice versa.

### 3. En Banc Decision and Impartial Review

Riaz's papers responding to the order to show cause requested en banc review. Our September 11, 2025 order stated the court would not conduct an en banc review of the appeal before or after the September 17, 2025 hearing. The order explained: "While en banc review is sometimes conducted by federal appellate courts, no California statute or rule of court explicitly authorizes a district of the California Court of Appeal to conduct an en banc review of a matter pending before it." In response to the order, Riaz's ex parte motion requested an impartial panel review rule upon all matters because of "the Fifth District's documented history of false fact-finding and its extraordinary, unauthorized effort to initiate a sua sponte appellate-level vexatious litigant order …." We have set forth this argument here to demonstrate it has been considered. It is, unfortunately, common for self-represented litigants to infer from rulings against them that the court issuing those ruling is biased. Adverse rulings, however, do not establish a court is biased. (See *Schmidt v. Superior Court*, *supra*, 44 Cal.App.5th at p. 589 ["Numerous and continuous rulings against a party are not grounds for a finding of bias"].) We conclude Riaz has not demonstrated the panel deciding this case is biased against her.

### 4. Constitutional Challenges and Frivolousness Requirement

To the extent that Riaz's paper contend the vexatious litigant statutes are unconstitutional, either on its face or as applied to her circumstances, we note that many published cases have addressed such challenges to the statutes. Despite these challenges, California's vexatious litigant statutes have consistently been upheld as constitutional. (*Hupp v. Solera Oak Greens Assn.* (2017) 12 Cal.App.5th 1300, 1312 [" 'Vexatious litigant statutes are constitutional and do not deprive a litigant of due process of law.' "

(Italics omitted.)]; *Fink v. Shemtov, supra,* 180 Cal.App.4th 1160, 1170-1171; *In re R.H.* (2009) 170 Cal.App.4th 678, disapproved on other grounds in *John*, *supra*, 63 Cal.4th at p. 99, fn. 2; *Wolfe v. George* (9th Cir. 2007) 486 F.3d 1120; *Wolfgram v. Wells Fargo Bank* (1997) 53 Cal.App.4th 43, 59–61; *Muller v. Tanner* (1969) 2 Cal.App.3d 445; *Taliaferro v. Hoogs* (1965) 236 Cal.App.2d 521.) "California's vexatious litigant statutes are constitutional because they allow vexatious litigants to keep filing lawsuits; the statutes are narrowly drawn so that vexatious litigants simply must comply with reasonable limitations, such as obtaining a prefiling order." (*Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 541.) Accordingly, we reject Riaz's challenges to the constitutionality of California's vexatious litigant statutes.

Riaz also argues several of the superior court cases and appellate court cases listed in the exhibit to the order to show cause should not count for purposes of the five-in-seven-years definition of a vexatious litigant because those matters were pursued to challenge judicial misconduct or to protect her constitutional rights. Riaz supports her arguments by citing *Bravo v. Ismaj* (2002) 99 Cal.App.4th 211 and *In re Bittaker* (1997) 55 Cal.App.4th 1004 (*Bittaker*).

In *Bittaker*, the court concluded the vexatious litigant statute was expressly limited to any "civil action or proceeding" (§ 391, subd. (a)) and the Legislature did not intend to include a habeas corpus proceeding in its definition of "litigation" subject to the vexatious litigant statute. (*Bittaker*, *supra*, 55 Cal.App.4th at p. 1011.) Here, we reject Riaz's attempts to characterize her civil actions alleging wrongful conduct in connection with the 5150 hold as the equivalent of petitions for a writ of habeas corpus that are not counted as a litigation under the vexatious litigant statute. Riaz's civil actions clearly fall within the phrase "civil action or proceeding" included in the definition of "litigation." (§ 391, subd. (a).) Therefore, those civil actions are not excluded from the definition of litigation.

52.

In *Bravo v. Ismaj*, the trial "court found Bravo vexatious as defined in section 391, subdivision (b)(3), based on Bravo's 'numerous frivolous motions, papers, and petitions to the Court of Appeal, and filings in the San Diego Superior Court on case number SB7515 ….' " (*Bravo v. Ismaj*, *supra*, 99 Cal.App.4th at p. 226.) The appellate court determined "[t]he evidence supporting this finding was overwhelming" and affirmed the trial court's order declaring Bravo to be a vexatious litigant. (*Id*. at pp. 226, 227.) Although Bravo had not been given a hearing, the appellate court concluded there was no prejudice because Bravo had not shown the outcome would have been different if he had been allowed an oral hearing. (*Id*. at p. 227.)

We have reviewed that opinion and conclude it does not hold cases raising constitutional claims, oversight claims involving institutional or judicial misconduct, or other whistleblower claims are excluded from the definition of "litigation" in section 391, subdivision (a). Furthermore, because *Bravo v. Ismaj* addressed a vexatious litigant determination under section 391, subdivision (b)(3)—a definition that explicitly uses the term "frivolous"—it is not authority supporting for Riaz's argument that an appeal cannot count as a litigation for purposes of the definition in section 391, subdivision (b)(1)(i) unless it is shown to be frivolous or otherwise without merit. A frivolousness requirement is not included in the definition in section 391, subdivision (b)(1)(i) and we cannot include something the Legislature chose to omit. (§ 1858 [rule of statutory construction]; see *Wolfgram v. Wells Fargo Bank*, *supra*, 53 Cal.App.4th at p. 58 ["The fact that the statute does not include a requirement that the five *losing* suits be frivolous does not render it unconstitutional."].)

To summarize, we reject Riaz's argument that the cases she pursued to protect her constitutional right, to challenge institutional or judicial misconduct, or to raise whistleblower claims do not count for purposes of determining whether five litigations have been finally determined adversely to her in the preceding seven years. (See § 391, subd. (b)(1)(i).)

### 5. Previous Vexatious Litigant Motions

Riaz contends that, in accordance with Evidence Code section 452, she properly requested this court to take judicial notice of "prior trial court denials in; ADJ13458767 (WCAB, Oct. 10, 2024 motion denied) VCU291575 (Tulare County, July 12, 202[2] motion denied) These orders confirm [her] filing did not meet the statutory threshold under CCP § 391, rebutting an appellate assumption of vexatious status absent trial-level factual findings." Under Riaz's view of the law, an appellate court is required to presume the order of the lower court not declaring her to be a vexatious litigant is correct.

The September 11, 2025 order granted this court's own motion to take judicial notice of the appellate record and its opinions in the case Nos. F085852, F088202, F085325, F086457, F085321, F085829, F085100, F087504, and F086624. It also stated:

> "*2022 Vexatious Litigant Motion.* Riaz's papers refer to a July 2022 order by the superior court denying a motion by the County of Tulare and related defendant to declare her a vexatious litigant. By taking judicial notice of the clerk's transcript in case No. F085325, the record before this court now contains information about that motion. [Citations to clerk's transcript.] As a result, the record shows the motion was filed on June 7, 2022, and was denied on July 12, 2022, because the trial court determined the motion was premature. [(*Riaz v. Kaweah Health Medical Center* (Jan. 31, 2024, F085325) p. 11 [nonpub. opn.], 2024 WL 356444, p. *5.)] Consequently, an issue raised by this court's sua sponte vexatious litigant motion is whether the motion is still premature or, whether events occurring since July 2022, have rendered at least five litigations 'finally determined adversely' to Riaz for purposes of the vexatious litigant definition contained in section 391, subdivision (b)(1)(i)."

Based on the record created as a result of our order granting judicial notice, we find the trial court denied the 2022 vexatious litigant motion as premature because the superior court matters listed in the motion were not finally adjudicated. The trial court's finding, which was made over three years ago, does not mean this court's motion also should be denied as premature. Based on the judicially noticed appellate records and opinions, we find the 14 cases listed in part VII.D. of this opinion have become final since the trial court's July 2022 ruling. Thus, Riaz's arguments about the significance of

earlier denials of vexatious litigant motions overstates the consequences of those denials. In other words, this court's motion is not premature, and any presumption of correctness afforded the trial court's order has been rebutted by evidence showing the adverse decisions are now final.

### 6. *Judicial Conduct Complaints*

Riaz contends this court has failed to address her request to take judicial notice of judicial conduct complaints she has filed based on false fact-finding and other judicial misconduct of a superior court judge, the Fifth District, the California Supreme Court, and the United States Supreme Court. Her papers list the time and date the complaints were submitted along with an entry number for approximately 27 such complaints. It appears Riaz believes that, because the complaints have been submitted, the underlying cases addressed in the complaint cannot be counted as a litigation finally determined adversely to her.

First, Riaz's request for judicial notice was procedurally defected because, contrary to the advisement in our order to show cause, she has not complied with California Rules of Court, rule 8.252(a). In particular, she has not served and filed "a separate motion" as required by California Rules of Court, rule 8.252(a)(1). More importantly, she has not attached to her papers "a copy of the matter to be notice" or provided "an explanation of why it is not practicable to do so" as required by California Rules of Court, rule 8.252(a)(3). As a result, the record does not a contain a copy of the complaints for which judicial notice is sought, and we do not know what those documents contain.

Second, Riaz has not cited, and we have not located, any authority supporting the argument that a decision resolving a case cannot be counted for purposes of section 391, subdivision (b)(1)(i) if the self-represented litigant has submitted a judicial conduct complaint. Such a requirement is not supported by the statutory text and, thus, we

conclude such complaints are not relevant to the application of the definition of a vexatious litigant in section 391, subdivision (b)(1)(i).

D.     Findings Regarding Litigants Finally Determined Adversely to Riaz

Having considered the papers Riaz filed with this court after the order to show cause was issued and provided her with an opportunity for a hearing, we now find that Riaz is a vexatious litigant within the meaning of section 391, subdivision (b)(1)(i). First, each of the 14 matters listed below qualifies as a separate "litigation" for purposes of section 391, subdivision (a). Second, based on the 14 "litigations" listed below, we find at least five litigations (1) have been commenced and have been prosecuted in propria persona by Riaz and (2) have been finally determined adversely to her. (§ 391, subd. (b)(1)(i).) The issuance of remittitur in the appeals demonstrate the finality of an appeal in this court and, where a judgment was affirmed, the finality of the "litigation" in the superior court. The 14 litigations are:

**1.** ***Riaz v. Altura Centers for Health***, Fifth District Court of Appeal case No. F085852. The nonpublished opinion filed on July 30, 2024, affirmed the February 15, 2023 judgment entered on a jury verdict in Tulare County Superior Court case No. VCU276991.[7] The California Supreme Court denied a petition for review on November 13, 2024 in case No. S286777. Remittitur issued November 14, 2024. The United States Supreme Court denied a petition for writ of certiorari in *Riaz v. Altura Centers for Health* (Feb. 24, 2025, case No. 24-6274) 145 S.Ct. 1205.

---

[7]     Riaz contends the superior court proceedings cannot count as a litigation adversely determined against her because she was represented by counsel during the pretrial stages of the case. She also contends the trial court improperly allowed counsel to withdraw without her consent or substitute counsel. The fact Riaz had counsel at the superior court level does not mean her appeal does not count under the definition in section 391, subdivision (b)(1)(i). The appeal is a separate "litigation" and Riaz filed the notice of appeal as a self-represented litigant and represented herself throughout the appeal.

**2.**    ***Riaz v. Superior Court,*** Fifth District Court of Appeal case No. F088202. The June 26, 2024 order denied a petition for writ of mandate that challenged, among other things, the April 11, 2024 "Order Denying and Striking Request for Disqualification" issued by Judge Bret Hillman in Tulare County Superior Court case No. VCU291199.  The California Supreme Court denied a petition for review on September 18, 2024 in case No. S285953.  The United States Supreme Court denied a petition for writ of certiorari in *Riaz v. Superior Court* (Jan. 13, 2025, case No. 24-5784) 145 S.Ct. 1073, 220 L.Ed.2d 392.

**3.**    ***Riaz v. Kaweah Health Medical Center, et al.,*** Tulare County Superior Court case No. VCU291575.  In November 2022, judgments of dismissal were entered after defendants' demurrers were sustained without leave to amend.

**4.**    ***Riaz v. Kaweah Health Medical Center, et al.,*** Fifth District Court of Appeal case No. F085325.  The nonpublished opinion filed on January 31, 2024, affirmed the judgments.  The California Supreme Court denied a petition for review on May 1, 2024, in case No. S284004.  Remittitur issued on May 3, 2024.  The United States Supreme Court denied a petition for writ of certiorari in *Riaz v. Kaweah Health Medical Center* (Oct. 7, 2024, case No. 23-7760) 145 S.Ct. 246.

**5.**    ***Riaz v. Workers' Compensation Appeals Board***, Fifth District Court of Appeal case No. F086457.  Our order filed on October 26, 2023, denied a petition for writ of review.  The California Supreme Court denied a petition for review on January 10, 2024, in case No. S282814.  The United States Supreme Court denied a petition for writ of certiorari in *Riaz v. Workers' Compensation Appeals Board* (June 17, 2024, case No. 23-7264) 144 S.Ct. 2668, 219 L.Ed.2d 1289.

**6.**    ***Riaz v. Micah Hoffman***, Tulare County Superior Court case No. VCU289787.  A judgment dismissing defendant Dr. Micah Hoffman with prejudice was filed on October 25, 2022.  His demurrer to the second amended complaint had been sustained without leave to amend.

**7.** ***Riaz v. Micah Hoffman***, Fifth District Court of Appeal case No. F085321. The nonpublished opinion filed on February 22, 2024, affirmed the judgment. The California Supreme Court denied a petition for review on May 15, 2024 in case No. S284288. Remittitur issued on May 16, 2024.

**8.** ***Riaz v. Family Health Care Network***, Tulare County Superior Court case No. VCU288720. A judgment for defendant was entered on February 17, 2023, after defendant's motion for summary judgment was granted.

**9.** ***Riaz v. Family Health Care Network***, Fifth District Court of Appeal case No. F085829. The nonpublished opinion filed on April 25, 2024, affirmed the judgment. The California Supreme Court denied a petition for review on August 14, 2024, in case No. S285144. Remittitur issued on August 15, 2024.

**10.** ***Riaz v. County of Tulare, et al.*** Tulare County Superior Court case No. VCU289294. Judgment of dismissal entered on October 6, 2022, after defendant's demurrer to the second amended complaint was sustained without leave to amend.

**11.** ***Riaz v. County of Tulare, et al.***, Fifth District Court of Appeal case No. F085100. The nonpublished opinion filed on January 25, 2024, affirmed the judgment. Remittitur issued on March 26, 2024.

**12.** ***Riaz v. The State of California, et al.*** Tulare County Superior Court case No. VCU298300. The trial court sustained defendants' demurrers without leave to amend and granted an anti-SLAPP motion.

**13.** ***Riaz v. The State of California, et al.***, Fifth District Court of Appeal case No. F087504. The nonpublished opinion filed on December 2, 2024, deemed the order sustaining demurrers without leave to amend as incorporating judgments of dismissal and affirmed the judgments. Remittitur issued February 3, 2025.

**14.** ***Riaz v. Superior Court***, Fifth District Court of Appeal case No. F086624. An order dated August 31, 2023, denied the petition for writ of mandamus challenging the denial of a request to disqualify Superior Court Judge Bret Hillman in

*Riaz v. The State of California, et al.*, Tulare County Superior Court case No. VCU298300. The California Supreme Court denied a petition for review on September 27, 2023, in case No. S281800. The United States Supreme Court denied a petition for writ of certiorari in *Riaz v. Superior Court* (Feb. 20, 2024, case No. 23-6168) 144 S.Ct. 833, 218 L.Ed.2d 37.

Assuming for the sake of argument that five of the superior court matters (i.e., Nos. 3, 6, 8, 10 and 12, above) should be combined with the related appeal before this court and the resulting combination counted as a single litigation (but see, *In re Kinney*, *supra*, 201 Cal.App.4th at p. 958 [each writ petition and appeal constitutes a separate litigation]), nine litigations have been finally determined adversely to Riaz in the last seven years.

Based on the foregoing findings, this court has the authority to issue an order declaring Riaz to be a vexatious litigant and prohibiting her from filing in propria persona any new litigation in the courts of the State of California without first obtaining leave of the presiding judge of the court where the litigation is proposed to be filed. (§ 391.7, subd. (a).)[8]

## DISPOSITION

The judgment is affirmed. Defendant Luma Fahoum shall recover her costs on appeal.

Samreen Riaz, also known as Samreen Farid Riaz and Samreen Faird, is hereby declared a vexatious litigant. Henceforth, she may not file any new litigation in the

---

[8] For the sake of clarity, we note the prefiling order will not affect any case already pending in a superior court or any appeal or writ proceeding currently pending in the Court of Appeal. It will affect any appeal or writ proceeding filed in the Court of Appeal after this opinion becomes final, even if the underlying superior court action was filed before this opinion. Based on the limited scope of the prefiling order and the order to show case, we will not issue an order *in this case* requiring Riaz to furnish security or face dismissal of the appeal. (See § 391.1, subd. (a).)

courts of the State of California in propria persona without first obtaining leave of the presiding judge or justice of the court where the litigation is proposed to be filed. (Code. Civ. Proc., § 391.7, subd. (a).) She is hereby notified that disobedience of this order may be punished as a contempt of court. (*Ibid*.)

Pursuant to Code of Civil Procedure section 391.7, subdivision (f), upon the issuance of the remittitur, the clerk of the Court of Appeal is directed to send a copy of this opinion and order to the Judicial Council for inclusion in the record of vexatious litigants.

FRANSON, ACTING P. J.

**WE CONCUR:**

SNAUFFER, J.

ELLISON, J. *

---

*      Retired judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.